IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| DANIELA AGUILERA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:14-cv-05118-MDH |
| AEGIS COMMUNICATIONS GROUP, LLC, et al., | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court is Defendant Aegis, Inc.'s ("AUSA") Motion to Dismiss. (Doc. No. 5). Defendant moves to dismiss Count III – Unjust Enrichment; Count IV – Breach of Contract; and Count VI – Forced Labor of Plaintiff's Petition.[1]

## BACKGROUND

Plaintiff's Petition alleges she was employed by ACG[2] from September 2011 through July 2012 as a call center employee in Joplin, MO. While employed at the call center, Plaintiff received a flyer about a one-year study abroad program at Aegis Global Academy in India. Plaintiff alleges Defendant made numerous representations to induce her to participate in the program, and that as a result of the representations Plaintiff agreed to participate. Plaintiff

---

[1] Plaintiff's Petition also brings claims against Aegis Communications Group, LLC. ("ACG"). However, ACG has not filed a motion or any responsive pleading in this case. Rather, by footnote, AUSA references that ACG no longer exists, has not been served, and is not a party to this lawsuit. Also by footnote, defendant AUSA submits that Counts III, IV, V and VII of Plaintiff's Petition fail to state a claim against ACG for the same reasons set forth in AUSA's pending motion. However, the Court is unable to make any such ruling because ACG does not have a proper motion before the Court and there is no evidence to support AUSA's argument at the Motion to Dismiss stage of this litigation. As such, this ruling pertains only to AUSA.

[2] Plaintiff alleges AUSA is the sole member of ACG.

1

ultimately took a leave of absence from her position in Joplin to participate in the one year work-study program in India.

Plaintiff claims there were numerous problems with the work-study program once she arrived in India. She further claims Defendant's representations regarding the work-study program were false. For example, Plaintiff alleges she was forced to work late shifts; she was not paid her monthly allowance; she was not provided adequate living quarters; she had persistent power outages and insufficient internet connection; she was not provided laundry service; and she received inadequate food that resulted in food poisoning and dysentery.

Plaintiff also claims she was forced to stay and complete the work-study program to remain employed by ACG back home. Specifically, Plaintiff alleges she was told that ACG would not pay for her return flight and that if she stopped working she would be terminated and responsible for her own return travel cost. She also claims she was unable to complete required online courses because of power outages and therefore was not sure if she would receive a $2,000 saving payment. Her Petition states she was told she would only receive the savings payment if she kept working her shifts. Plaintiff's Petition contains numerous other allegations against Defendant regarding the work-study program that are not necessary for purposes of this Court's analysis of the pending Motion to Dismiss.

## STANDARD OF REVIEW

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must plead facts that show more than a mere speculation or

possibility that the defendant acted unlawfully.  *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions.  *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft*, 556 U.S. at 679.  The reviewing court must read the complaint as a whole rather than analyzing each allegation in isolation.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

First, Plaintiff's response to the Motion to Dismiss "accepts Defendant's argument" on Count IV and "concedes the contract alleged in count IV is rendered nonexistent and barred by the statute of frauds."  (Doc. No. 8, p. 8).  As such, the Court **GRANTS** Defendant's Motion to Dismiss Count IV of Plaintiff's Petition.

Next, Plaintiff's response states "Plaintiff dismisses Count III of her petition and will present no further discussion regarding Count III."  As such, the Court **GRANTS** Defendant's Motion to Dismiss Count III of Plaintiff's Petition.  (Doc. No. 8, pp. 8-9).

Therefore, the only remaining issue is Defendant's Motion to Dismiss Count VI – Forced Labor.  Plaintiff brings this claim against Defendant under 18 U.S.C. § 1589, the Trafficking Victims Protection Act ("TVPA").  Plaintiff seeks a civil remedy under this Act pursuant to 18 U.S.C. § 1595.  Plaintiff alleges, in part, AUSA was responsible for the operation of the work-study program and the plan to obtain Plaintiff's services in that program.  Plaintiff claims AUSA created and implemented the plan that placed Plaintiff in a position where she was forced to

3

perform labor. Plaintiff also alleges AUSA knowingly benefited from Plaintiff's participation in the program.

Section 1589 states:

**(a)** Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--

    **(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
    **(2)** by means of serious harm or threats of serious harm to that person or another person;
    **(3)** by means of the abuse or threatened abuse of law or legal process; or
    **(4)** by means of any *scheme, plan, or pattern intended to cause the person to believe* that, if that person did not perform such labor or services, that person or another person would suffer *serious harm* or physical restraint,

shall be punished as provided under subsection (d).

**(b)** *Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture* which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

**(c)** In this section:

    **(1)** The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

    **(2)** The term "*serious harm*" means any harm, whether physical or nonphysical, including psychological, *financial*, or *reputational harm*, that is sufficiently serious, under all the surrounding circumstances, *to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm*. (*emphasis added*).

4

Defendant's brief states it is "cognizant of the Court's prior consideration of dismissal of TVPA claims under similar factual circumstances," and therefore while not setting forth those same arguments simply reasserts the defenses and arguments made in those cases by reference.[3] In this case, Defendant focuses its arguments on two issues: 1) whether the TVPA should apply extraterritorially; and 2) whether Plaintiff has failed to sufficiently plead the knowing receipt of benefit by AUSA.

Fist, as this Court has previously stated, several Courts have discussed the scope of the TVPA. The TVPA is "an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, *in the United States and countries around the world* through prevention, through prosecution and enforcement against traffickers, and through protection and assistance to victims of trafficking. The purpose of the Act is to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers. Many of the victims are 'trafficked into the international sex trade, often by force, fraud or coercion.'" *Nunag-Tanedo v. East Baton Rouge Parish School Board,* 790 F.Supp.2d 1134, 1143 (C.D. Cal. 2011); *citing,* H.R. Conf. Rep. 106-939, at 1 (2000)(*emphasis added*).

In discussing the application of the TVPA, the Ninth Circuit stated "Congress intended to 'reach cases in which persons are held in a condition of servitude through nonviolent coercion'… and the means used by modern-day traffickers are increasingly subtle." *U.S. v. Dann,* 652 F.3d 1160, 1169 (9th Cir. 2011). However, not all bad employer-employee relationships will constitute forced labor. *Id.* at 1170. Congress intended to address serious trafficking, and the

---

[3] *Friend v. Aegis Communications Group, et al.,* 13-CV-05054-MDH and *Vaughn v. Aegis Communications Group, et al.,* 13-CV-05097-MDH.

threat considered from the vantage point of a reasonable person in the place of the victim must be sufficiently serious to compel the person to remain. *Id.*

Defendant argues that the TVPA does not apply to the facts in this case because the focus of the Act is the trafficking of people *into* the United States. Defendant believes the Act should not apply extraterritorially and cites to Pub. L. No. 110-457, Section 223 - "Combating Trafficking in Persons in the United States" to support its' position. Defendant's citation states the following:

> Additional jurisdiction in certain trafficking offenses:
>
> **(a)** **In general.**--In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, *the courts of the United States have extra-territorial jurisdiction over any offense* (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, *1589,* 1590, or 1591 *if—*
>
> **(1)** *an alleged offender is a national of the United States* or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)); or
>
> **(2)** *an alleged offender is present in the United States*, irrespective of the nationality of the alleged offender.
>
> **(b)** **Limitation on prosecutions of offenses prosecuted in other countries.**--No prosecution may be commenced against a person under this section if a foreign government, in accordance with jurisdiction recognized by the United States, has prosecuted or is prosecuting such person for the conduct constituting such offense, except upon the approval of the Attorney General or the Deputy Attorney General (or a person acting in either such capacity), which function of approval may not be delegated. 18 U.S.C.A. § 1596 (*emphasis added).*

While Defendant proffers this citation to argue that the TVPA only applies when victims are trafficked *into* the United States, the Court does not find that the statute supports this contention. While Defendant may be correct that the majority of cases involving the TVPA contain factual

6

scenarios in which people are trafficked into the United States, as opposed to out of the United States, the Court is not convinced that the Act does not apply to both scenarios.

Further, Defendant has previously argued the TVPA should not apply extraterritorially based on the decision in *Liu Meng-Lin v. Siemens AG,* 2014 WL 3953672 (2nd Cir. August 14, 2014). As this Court has previously held, the facts in *Liu Meng-Lin* are dissimilar to the allegations arising from the plaintiffs who participated in the Aegis work-study program in India. Here, similar to the other Aegis cases before this Court, Plaintiff alleges she communicated with the Defendant, who remained in the US, while she was in India. Plaintiff alleges Defendant benefited, at a minimum financially, in the U.S. from the work she performed in India. Finally, Plaintiff alleges she could not return home and was forced to stay in India and work.

Defendant's reliance on *Kiobel v. Royal Dutch Petroleum, Co.,* 133 S.Ct. 1659 (2013) is also unpersuasive. In *Kiobel,* the issue raised was whether a proper claim was made under the Alien Tort Statute ("ATS"). *Id.* at 1664. The Court specifically stated "the danger of unwarranted judicial interference in the conduct of foreign policy is magnified in the context of the ATS…. This court in *Sosa* repeatedly stressed the need for judicial caution in considering which claims could be brought under the ATS, in light of foreign policy concerns." *Id.* Here, the ATS is not at issue and the heightened judicial caution relevant to those claims is not relevant to this TVPA claim. As such, upon review of Plaintiff's Petition, the Court finds, without any decision as to the merits of Plaintiff's allegations, that Plaintiff has alleged enough to survive a motion to dismiss on her claim for forced labor.

Plaintiff's second argument is that Plaintiff has failed to sufficiently plead a claim for violation of the TVPA. Under Fed. R. Civ. P. 8(a)(2): a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.

7

Defendant's argument is that Plaintiff has not plead enough to state a claim that AUSA benefited from forced labor.

Defendant claims that Plaintiff's allegations are nothing more than a recitation of the element of the claim and only vaguely alleges that AUSA received a benefit. Defendant contends Plaintiff must allege the source or amount of the benefit, how and when the alleged benefit was conferred upon AUSA or how AUSA knew it received the alleged benefit. A review of the Petition reveals, at a minimum, the following allegations: AUSA was "incentivized, financially or otherwise, to promote the study abroad program;" "AUSA knowingly obtained the labor services of Plaintiff by making threats of serious harm and/or by utilizing its plan;" and "in the event AUSA was not operating the work-study program in India, it knowingly benefited from Plaintiff's participation in the program and from its own participation in the program." Plaintiff clearly alleges AUSA financially benefited from the work-study program and from Plaintiff's labor and services.

At this stage, the Court's analysis is merely whether Plaintiff has alleged enough in her Petition to proceed. The Court finds that the 26 page Petition has sufficiently put Defendant on notice of what Plaintiff claims violated the TVPA. While a specific amount is not identified as the benefit, Plaintiff alleges Defendant financially benefited from its involvement in the work-study program.

## **CONCLUSION**

While the Court's Order does not address the merits of this case, it finds Plaintiff has pled enough to proceed on Count VI – Forced Labor. Plaintiff's Petition adequately meets the federal notice pleading requirement with regard to this claim. Therefore, the Court **DENIES** Defendant's Motion to Dismiss VI. Further, as stated herein, the Court **GRANTS** Defendant's

Motion to Dismiss Counts III and IV.

**IT IS SO ORDERED.**

                                       */s/ Douglas Harpool*
                                            DOUGLAS HARPOOL
                                    UNITED STATES DISTRICT JUDGE

DATED: December 9, 2014